IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY AUGUSTUS GARDNER,<br><br>        Petitioner,<br><br>  vs.<br><br>A. P. KANE, Warden,<br><br>        Respondent. | No. C 05-01538 JW (PR)<br><br>ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS |

Petitioner, an inmate currently incarcerated at the California Correctional Training Facility in Soledad, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging the decision by the California Board of Prison Terms ("BPT") on May 20, 2004, finding him not suitable for parole.

The Court found that the petition, liberally construed, stated a cognizable claim under § 2254, and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent filed an answer, and petitioner filed a traverse.

///

Order Denying Petition for a Writ of Habeas Corpus
N:\Pro - Se\9.25.2007\05-01538 Gardner1538_denyHC.wpd

**BACKGROUND**

Petitioner pleaded guilty to first degree murder in 1981, and was sentenced to seven years to life with the possibility of parole in state prison. At the time this petition was filed, petitioner had appeared before the BPT thirteen times for parole consideration, and was each time found unsuitable for parole. Petitioner challenged the panel's May 20, 2004 decision denying parole in the state superior, appellate and supreme courts, alleging that the BPT's decision denying him parole violated due process. Petitioner exhausted this claim in the state high court, and filed the instant federal habeas petition on April 14, 2005.

**DISCUSSION**

A.   Standard of review

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the]

1  Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529
2  U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal
3  habeas court may grant the writ if the state court identifies the correct governing
4  legal principle from [the] Court's decisions but unreasonably applies that principle
5  to the facts of the prisoner's case." Id. at 413.

6       "[A] federal habeas court may not issue the writ simply because that court
7  concludes in its independent judgment that the relevant state-court decision applied
8  clearly established federal law erroneously or incorrectly. Rather, that application
9  must also be unreasonable." Id. at 411. A federal habeas court making the
10 "unreasonable application" inquiry should ask whether the state court's application
11 of clearly established federal law was "objectively unreasonable." Id. at 409.

12      The only definitive source of clearly established federal law under 28 U.S.C.
13 § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the
14 time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069
15 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of
16 determining whether a state court decision is an unreasonable application of
17 Supreme Court precedent, only the Supreme Court's holdings are binding on the
18 state courts and only those holdings need be "reasonably" applied. Id.

19 B.   Claims and Analysis

20      Petitioner seeks federal habeas corpus relief from the BPT's May 20, 2004
21 decision finding him not suitable for parole on the ground that the decision does not
22 comport with due process. At the time the petitioner filed the instant petition,
23 petitioner had appeared before the BPT thirteen times, including the May 20, 2004
24 hearing, without being granted parole. Petitioner claims that he is being denied
25 parole due to the nature of his original offense, and as a consequence has been
26 incarcerated for more than twenty-seven years based upon a plea to a crime with a

1 maximum base term of twenty-two years.

2 California's parole scheme provides that the board "shall set a release date
3 unless it determines that the gravity of the current convicted offense or offenses, or
4 the timing and gravity of current or past convicted offense or offenses, is such that
5 consideration of the public safety requires a more lengthy period of incarceration for
6 this individual, and that a parole date, therefore, cannot be fixed at this meeting."
7 Cal. Penal Code § 3041(b). In making this determination, the board must consider
8 various factors, including the prisoner's social history, past criminal history, and
9 base and other commitment offenses, including behavior before, during and after the
10 crime. See Cal. Code Regs. tit. 15, § 2402(b) - (d). This parole scheme "gives rise
11 to a cognizable liberty interest in release on parole." McQuillion v. Duncan, 306
12 F.3d 895, 902 (9th Cir. 2002). It matters not that, as is the case here, a parole release
13 date has never been set for the inmate because "[t]he liberty interest is created, not
14 upon the grant of a parole date, but upon the incarceration of the inmate." Biggs v.
15 Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003) (finding initial refusal to set parole
16 date for prisoner with 15- to- life sentence implicated prisoner's liberty interest).[1]

17 It is well established that due process requires that "some evidence" support
18 the parole board's decision not to release the prisoner. Biggs, 334 F.3d at 915
19 (holding that Superintendent v. Hill, 472 U.S. 445 (1985), which required "some
20 evidence" to support revocation of inmate's good-time credits, applies to decisions
21 to deny parole reviewed in § 2254 habeas petition); McQuillion, 306 F.2d at 904
22 (same); Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987)

---

[1] The Supreme Court of California's opinion in In re Dannenberg, 34 Cal. 4th 1061 (2005), does not compel a different conclusion. Dannenberg supports, rather than rejects, the existence of a constitutional liberty interest in parole in California. Accord Machado v. Kane, No. C 05-1632 WHA (PR), 2006 WL 449146, at **2-4 (N.D. Cal. Feb. 22, 2006) (rejecting argument that Dannenberg construed section 3041 as no longer creating an expectancy of release).

Order Denying Petition for a Writ of Habeas Corpus
N:\Pro - Se\9.25.2007\05-01538 Gardner1538_denyHC.wpd      4

1    (same).  The "some evidence" standard is minimally stringent: the "Due Process

2    Clause does not require courts to set aside decisions of prison administrators that

3    have <u>some</u> basis in fact."  <u>Hill</u>, 472 US at 456 (emphasis added).  The relevant

4    question for the reviewing court is "whether there is any evidence in the record that

5    could support the conclusion reached by the [BPT]."  <u>Id.</u> at 455- 56.  The court

6    "cannot reweigh the evidence;" it only looks "to see if 'some evidence' supports the

7    BPT's decision."  <u>Powell v. Gomez</u>, 33 F.3d 39, 42 (9th Cir. 1994).

8         Due process also requires that the evidence underlying the parole board's

9    decision have some indicia of reliability.  <u>Biggs</u>, 334 F.3d at 915; <u>McQuillion</u>, 306

10   F.3d at 904; <u>Jancsek</u>, 833 F.3d at 1390.  Relevant in this inquiry is whether the

11   prisoner was afforded an opportunity to appear before, and present evidence to, the

12   board.  <u>See</u> <u>Pedro v. Oregon Parole Bd.</u>, 825 F.2d 1396, 1399 (9th Cir. 1987).  In

13   sum, if the parole board's determination of parole unsuitability is to satisfy due

14   process, there must be some evidence, with some indicia of reliability, to support the

15   decision.  <u>See</u> <u>Rosas v. Nielsen</u>, 428 F.3d 1229, 1232 (9th Cir 2005).

16        The record shows that on May 20, 2004, petitioner appeared with counsel

17   before a BPT hearing panel for his thirteenth parole consideration hearing.  The

18   presiding commissioner explained that in assessing whether petitioner was suitable

19   for parole, the panel would consider factors such as the nature and the number of

20   crimes for which petitioner had been committed, his prior criminality, social history,

21   and his behavior and programming since his commitment.  <u>See</u> Hr'g Tr. at 5 (Resp't

22   Ex. 6).  The panel would also consider petitioner's progress since the last hearing,

23   any new psychiatric reports, and any other information that may have a bearing on

24   parole suitability.  The commissioner also explained that petitioner would be given

25   an opportunity to make corrections or clarifications to the record if petitioner felt it

26   was necessary, and that petitioner and his attorney would be given the opportunity to

1  make a final statement regarding petitioner's suitability for parole and the length of
2  confinement. Finally, the commissioner confirmed with petitioner that the panel
3  appeared to be objective, as required.

4  The panel then discussed with petitioner the facts of the crime, including the
5  preparations, how the incident unfolded, and petitioner's thoughts during the
6  commission of the crime. Additionally, the panel inquired about petitioner's
7  remorse, his criminal history, his social history and his plans upon release. The
8  panel reviewed petitioner's psychological evaluation from 2003 and also heard final
9  statements from petitioner and his attorney.

10  After recessing to deliberate, the panel concluded that petitioner was "not yet
11  suitable for parole." Id. at 47. The panel explained that although petitioner was
12  making progress and his level of dangerousness was being reduced, there were out-
13  weighing factors that required a one-year denial. The factors included the nature of
14  the commitment crime, an escalating pattern of criminal conduct which was not
15  assuaged by previous grants of parole and probation, an unstable social history, the
16  lack of participation in self-help programs, and insufficient parole plans. The panel
17  noted that the crime was "carried out in a manner that demonstrates an exceptionally
18  callous disregard for another human being." Hr'g Tr. at 48 (Resp't Ex 2). They
19  noted that the victim had been beaten and tied, and was discovered dead with his
20  hands tied and a blood-soaked towel in his mouth. Id. at 48. They found the motive
21  for the crime "inexplicable." Id.

22  The BPT also found that petitioner did not sufficiently participate in self-help
23  programs, particularly substance abuse programs. The panel noted that the 2003
24  psychological evaluation stated that substance abuse was a significant risk factor in
25  the assessment of petitioner's dangerousness: "If released to the community,
26  [petitioner's] violence potential is considered to be no higher than that of the average

1    citizen in the community, if he remains substance free," and "[s]ubstance abuse is a
2    significant risk factor which may be a precursor to violence for this individual."
3    (Resp't Ex. 13 at 4). The panel urged petitioner to become involved in a self-help
4    program for substance abuse, and make participation in such a program an extension
5    of his parole plans. Hr'g Tr. at 51 (Resp't Ex 2).

    The BPT lastly expressed concern over petitioner's parole plans, which involved running an online business selling handmade arts and crafts and living in a motor home. The panel found that petitioner's plans were inadequate as petitioner had no bona fide job offer to sustain him until his online business was fully operational, and there was no information as to where petitioner would park his motor home and how much rent he would have to pay. Id. at 49.

    The superior court upheld the decision of the BPT, and the state appellate and supreme courts summarily affirmed. The superior court relied on the California Supreme Court's decision in In re Dannenberg, 34 Cal. 4th 1061 (2005), stating that the BPT could continue to deny an inmate parole "based solely on the nature of the commitment offense, so long as the Board's decision is supported by reference to specific facts regarding the commitment offense that show the offense to be particularly violent or callous." In re Gardner, No. HC04890, slip op. at 1 (Cal. Super. Ct., May 26, 2005) (Resp't Ex. 15). In other words, there was "some evidence" to support the BPT's decision to deny parole. The state court's rejection of petitioner's claim was not contrary to, or an unreasonable application of, the Hill standard, or was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). The BPT's May 20, 2004 decision to deny petitioner parole after his thirteenth parole consideration hearing is supported by some evidence in the record and that evidence bears some indicia of reliability. See, e.g., Rosas, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and psychiatric

reports); Biggs, 334 F.3d at 916 (upholding denial of parole based solely on gravity of offense and conduct prior to imprisonment); Morales, 16 F.3d at 1005 (upholding denial of parole based on criminal history, cruel nature of offense, and need for further psychiatric treatment). The inquiry under Hill is simply "whether there is any evidence in the record that could support the conclusion reached by the [BPT]." Hill, 474 U.S. at 455-56 (emphasis added). There is - the facts surrounding the crime reasonably suggested that it was carried out in a cruel and callous fashion; petitioner's history of substance abuse posed a risk of high level of dangerousness to the community; and petitioner's parole plans were inadequate. Cf. Cal. Code Regs. tit 15, § 2402(c) & (d) (listing circumstances tending to show unsuitability for parole and circumstances tending to show suitability). It is not up to this Court to "reweigh the evidence." Powell, 33 F.3d at 42.

The Court is satisfied that the BPT gave petitioner individualized consideration and that there is "some evidence" in the record to support the Board's decision to deny petitioner parole at the May, 20, 2004 hearing. It simply cannot be said that the state courts' rejection of petitioner's challenge to the BPT's May 20, 2004 decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or that it was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). Petitioner is not entitled to federal habeas relief.

## CONCLUSION

For the foregoing reasons, the petition for a wit of habeas corpus is DENIED.

DATED: September 21, 2007

*James Ware*
JAMES WARE
United States District Judge

Order Denying Petition for a Writ of Habeas Corpus
N:\Pro - Se\9.25.2007\05-01538 Gardner1538_denyHC.wpd      8